## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:19-CV-523-DJH-CHL

BRANDON HUTCHINS,

                                                                    **Plaintiff,**

v.

COMMISSIONER OF SOCIAL SECURITY,                         **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court is the complaint of Plaintiff, Brandon P. Hutchins ("Hutchins"), challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits.  (DN 1.)  This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation.  (DN 13.)  Hutchins filed a brief in support and a fact and law summary on January 2, 2020 (DN 18-1), and the Commissioner filed a fact and law summary on March 31, 2020 (DN 24).  Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

## I.    FINDINGS OF FACT

Hutchins protectively filed an application for disability insurance benefits on February 24, 2016. (DN 11-5, at PageID# 244.) On July 23, 2018, Administrative Law Judge D. Lyndell Pickett (the "ALJ") conducted a hearing on Hutchins's application. (DN 11-2, at PageID # 64.) In a decision dated October 24, 2018, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether the individual is disabled. (DN 11-2, at PageID # 66-79). In doing so, the ALJ made these findings:

(1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.  (*Id*. at 66.)

(2)     The claimant has not engaged in substantial gainful activity since January 8, 2016, the alleged onset date. (20 CFR § 404.1571 *et seq*.) (*Id*.)

(3)     The claimant has the following severe impairments: status post injuries sustained in a motor vehicle accident to include fractured pelvis, L1 through L4 right transverse process fractures, L5 right transverse fracture, and traumatic brain injury; residual S1 sensory loss in the left lower extremity; history of blood clots to the left lower extremity; radiculopathy versus neuropathy; mild neurocognitive disorder; and adjustment disorder with mood disturbance. (20 CFR § 404.1520(c)) (*Id*.)

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526). (*Id*.)

(5)     [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he should avoid climbing ladders, ropes or scaffolds or more than occasional climbing of ramps and/or stairs. He is limited to occasional balancing, stooping, kneeling, crouching, and crawling. He should avoid exposure to hazardous conditions such as unprotected heights or dangerous machinery. He is able to understand, remember and carry out simple instructions, respond appropriately to supervision and coworkers in usual work situations, and deal with changes in a routine work setting. He should avoid working with the general public and occasionally interact with supervisors and coworkers. The work should be considered low stress work with no strict production rate quotas. (*Id*. at 69.)

(6)     The claimant is unable to perform any past relevant work (20 CRF § 404.1565). (*Id*. at 78.)

(7)     The claimant was born on April 16, 1985 and was 30 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR § 404.1563). (*Id*. at 78.)

(8)     The claimant has at least high school education and is able to communicate in English (20 CFR § 404.1564). (*Id*. at 78.)

(9)     The transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has

transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (*Id*. at 78.)

(10)     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR §§ 404.1569 and 404.1569a). (*Id*. at 78.)

Hutchins requested an appeal to the Appeals Council, which denied his request for review on May 21, 2019 (DN 11-2, at PageID #50-52). At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210(a) (2018); *see also* 42 U.S.C. § 405(b) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. 422.210(c), Hutchins is presumed to have received that decision five days later, on May 26, 2019. 20 C.F.R. § 422.210(c). Accordingly, Hutchins timely filed this application on July 17, 2019. *See* 42 U.S.C. § 405(g).

## II.     LEGAL ANALYSIS

The Social Security Act authorizes payments of disability insurance benefits and SSI to persons with disabilities.  *See* 42 U.S.C. § 401 – 434 (2018).  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2018).

### A.     Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.      Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim.  20 C.F.R. § 404.1520(2018).  In summary, the evaluation process proceeds as follows:

(1)      Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits his or her physical or mental ability to do basic work activities?  If the answer is "no," the claimant is not disabled.  If the answer is "yes," proceed to the next step.

(3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1?  If the answer is "yes," the claimant is disabled.  If the answer is "no," proceed to the next step.

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months.  20 C.F.R. § 416.909 (2019).

(4)     Does the claimant have the residual function capacity ("RFC") to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

(5)     Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

The claimant bears the burden of proof with respect to steps one through four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.     Hutchins's Contentions

First, Hutchins alleges that the ALJ failed to adequately assess and weigh the opinion evidence concerning Plaintiff's mental impairment concerning findings five and ten. Second, Hutchins alleges that the ALJ failed to support his physical RFC ruling with a functional assessment concerning finding five. The undersigned will address each of Hutchins's contentions below.

A claimant's RFC is "the most [a claimant] can still do despite [the claimant's] limitations . . . based on all relevant evidence in [the claimant's] case record."  20 C.F.R. § 416.945(a) (2018). The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record.  *Id.*  Thus, in making the RFC finding, the ALJ must assign weight to the medical source statements in the record and consider the descriptions and observations of the claimant's limitations as a result of any impairments from the claimant and the claimant's family and friends.  *Id.* § 416.945(a)(3); 20 C.F.R. § 416.927(c) (2019).

In his or her determination of RFC, the ALJ must consider all medically determinable impairments, which include both severe and nonsevere impairments.  SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); 20 C.F.R. § 416.945(a)(2).  A mental RFC determination often considers similar evidence as the specific Paragraph B findings used to determine impairment severity under step two of the five step process, but the mental RFC determination requires "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments and summarized on the [Psychiatric Review Technique Form]."  SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); 20 C.F.R. § 416.920a (2018).

Further, though SSR 96-8p mandates "a 'function-by-function' evaluation to determine the plaintiff's RFC, the ALJ is not required 'to produce such a detailed statement in writing.'"  *Elder v. Comm'r of Soc. Sec.*, No. 2:15-cv-2740, 2016 U.S. Dist. LEXIS 96018, at *17 (S.D. Ohio July 22, 2016) (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002)) (report and recommendation adopted in *Elder v. Colvin*, No. 2:15-cv-2740, 2016 U.S. Dist. LEXIS 116508, at *1 (S.D. Ohio Aug. 30, 2016)).  Although all medically determinable impairments must be considered, there is no "heightened articulation requirement to explain how each severe or nonsevere impairment impacts the disability determination."  *Id.*; *see Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The plain language of the ALJ's opinion states that he considered all impairments. The ALJ thus considered all evidence as required by the regulation."); *see also Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) (finding that "to require a more elaborate articulation of the ALJ's thought processes would not be reasonable" after

6

the ALJ considered all individual impairments and stated that "based upon the medical evidence . . . the claimant retains the ability to perform his former work.")

### 1.  Opinion Evidence Concerning Plaintiff's Mental Impairment

A.  Dr. Conyer, Non-Treating Opinion

In making a determination of a claimant's RFC, the ALJ is required to consider the record as a whole, including the claimant's testimony and opinions from the claimant's medical sources. *See* 20 C.F.R. § 404.1545(a) (2018).  The source of a medical opinion dictates the process by which the ALJ gives it weight.  *Gayheart*, 710 F.3d at 376.  Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not.  *Id.* at 375.  An examining source "has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with her.'"  *Smith*, 482 F.3d at 875 (quoting 20 C.F.R. § 402.1502).  A nonexamining source is a medical source who has not examined the claimant but provides a medical or other opinion in the claimant's case. *Id.*

In affording weight to an examining source, the ALJ is required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).  However, a medical opinion from an examining source is "never assessed for 'controlling weight.'"  *Gayheart*, 710 F.3d at 376.  Further, unlike when an ALJ gives less than controlling weight to the opinion of a treating physician, an ALJ is not required to give "good reasons" for the weight ascribed to an examining physician's opinion.  *See Ealy*, 594 F.3d at 514 ("[A]n ALJ is procedurally required to 'give good reasons in [his] notice of determination or

decision for the weight [he gave the claimant's] treating source's opinion.' However, this requirement only applies to treating sources.")  Instead, the ALJ must only "say enough 'to allow the appellate court to trace the path of his reasoning.'"  *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

Plaintiff argues that the ALJ incorrectly afforded little weight to Dr. Conyer's opinion that Plaintiff had marked limitation in ability to understand, remember, and carry out instructions towards simple repetitive tasks, and instead the ALJ accepted the opinion of State Agency psychological consultants. (DN 18-1, at PageID # 1313.)

Plaintiff argues that the initial State Agency psychological consultant issued his opinion October 26, 2016, fifteen days after Dr. Conyer's examination. (DN 11-3, at PageID #1322.) Plaintiff argues that the non-examining physician simply second-guessed Dr. Conyer's opinion. (DN 18-1, at PageID # 1315.)

Plaintiff argues that the State Agency psychological consultants did not make any reference in their report of the appointment of a permanent guardian from April 2016. (DN 11-3, at PageID# 127; 143.) Plaintiff argues that the guardianship is ongoing and is evidence supporting Dr. Conyer's opinion. (DN 18-1, at PageID #1315.) However, the ALJ's decision reflects that the ALJ did consider Plaintiff's guardianship in the course of making the decision and Plaintiff does not support his argument with caselaw that a medical report is somehow lacking because it does not include Plaintiff's guardianship status. (DN 11-2, at PageID #76.)

Plaintiff argues that even though the ALJ found subsequent improvement warranted a departure from Dr. Conyer's examining opinion, the ALJ's reliance on the opinions of non-examining physicians should be viewed with skepticism. (DN 18-1, at PageID #1315.) Plaintiff cites to *Ortiz v. Colvin*, No. 3:15CV00956 (SALM), 2016 WL 4005605, at *8 (D. Conn. July 26,

2016) (citing *Velazquez v. Barnhart*, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) in support of his argument. However, Plaintiff's reliance on *Ortiz* is misplaced as that case dealt with an improper application of the treating physician rule wherein plaintiff had an established treatment history with two treating physicians and both physicians' opinions were given little weight. In the instant case Dr. Conyer was not a treating physician. (DN 11-8, at PageID #1134.)

In response, Defendant argues that a consultative examiner is not entitled to the protections of the good reasons rule, and an ALJ need only explain the general weight given to non-treating source opinions. (DN 24, at PageID # 1337). Defendant argues that the ALJ adequately explained the general weight given to Conyer's opinion, which was sufficient under *Martin v. Comm'r of Soc. Sec.*, 658 Fed. Appx. 255, 259 (6th Cir. 2016). (DN 24, at PageID # 1338).

Defendant argues that the reviewing physicians noted that objective observations of the claimant by medical sources indicated the capacity to understand and retain simple instructions; that he was moderately limited in his ability to carry out detailed/complex instructions but was able to follow simple instructions and complete simple, routine tasks on a sustained basis; and that he could adapt to most changes and task demands on a sustained basis and could avoid hazards and arrange transportation. (DN 11-3, at PageID #148). The ALJ found this opinion to be consistent with the various neurological and mental status examinations of record and with Plaintiff's demonstrated functioning during testing. (DN 11-2, at PageID #77.)

Dr. Conyer was an examining source, not a treating source, because Dr. Conyer assessed Plaintiff in person on one occasion. (DN 11-8, at PageID #1134.) Dr. Conyer found that Plaintiff's capacity to understand, remember and carry out instructions towards performance of simple repetitive tasks appeared affected to a marked degree. (DN 11-8, at PageID # 1138.) Dr. Conyer also found that Plaintiff's ability to tolerate stress and pressure of day-to-day employment appeared

affected to a moderate degree. (*Id*.) Dr. Conyer found that Plaintiff's ability to sustain attention and concentration towards performance of simple repetitive tasks, and Plaintiff's capacity to respond appropriately to supervisors and coworkers in a work setting appeared affected to a slight degree. (*Id*.) The ALJ stated:

> The opinion of Dr. Conyer as set forth in Ex. 9F that the claimant has marked limitation in ability to understand, remember, and carry out instructions towards simple repetitive tasks is assigned little weight as it appears to rely too heavily on the claimant's self-report of limitations, it appears to be a snapshot overestimate of limitations, and is not consistent nor supported by the preponderance of the objective evidence in file, particularly when considering the progress the claimant had made following his inpatient and outpatient rehabilitation. Conversely, Dr. Conyer's opinions regarding slight to moderate limitations in all other performance, occupational and performance-social functioning are assigned great weight as they are consistent with and supported by the preponderance of the objective evidence in file, particularly when considering the progress the claimant had made following his inpatient and outpatient rehabilitation.

(DN 11-2, at PageID #77.)

The ALJ specifically cited to Exhibits 2F, 3F, 5F and 6F when stating that Dr. Conyer's opinion was not consistent nor supported by the preponderance of the objective evidence in the file. The records cited to indicate that Plaintiff made progress on his cognitive issues during his formal inpatient rehabilitation and his subsequent outpatient therapy. (DN 11-8, at PageID #865, 1008, 1046, 1055, 1109-1110.) The ALJ specifically noted that by inpatient rehab discharge on March 15, 2016, Plaintiff was able to comprehend and express basic/complex information with no difficulties, he demonstrated mild cognitive-linguistic deficits and though Plaintiff was distractible at times, he was able to complete function memory/problem solving tasks with minimal cues. (DN 11-2, at PageID #76.) All of this information was supported by the medical records cited above.

Based on the undersigned's review of the record, the undersigned finds that the ALJ supported the decision to afford Dr. Conyer's opinion little weight with adequate reasons. Accordingly, the

undersigned finds the ALJ's decision supported by substantial evidence and finds no error in the assessment of Dr. Conyer's opinion.

**B.  Dr. Kaelin- Treating Physician**

A physician will be considered a treating source if the claimant sees him "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). A treating source's opinion generally must be given controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376.  If the treating source is not given controlling weight, then the "opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Id*.  (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

Whatever weight the ALJ accords a treating source's opinion, he or she must set forth "good reasons" for doing so. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004) ("The regulation requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." (citing 20 C.F.R. § 404.1527(d)(2)).  Specifically, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p, 61 Fed. Reg. 34,490, 34,492 (July 2, 1996) (rescinded for all claims filed on or after March 27, 2017 by Rescission of Social Security Rulings

96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (March 27, 2017)).[2]  However, an ALJ is not required to explicitly recite the regulatory factors if his or her explanation reflects them. *Infantado v. Astrue*, 263 Fed. App'x. 469, 474 (6th Cir. 2008); *see also Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804-05 (6th Cir. 2011) (noting that the regulations only require an ALJ include "good reasons" for the weight given a treating source's opinion, not "an exhaustive factor-by-factor analysis").

Plaintiff vaguely argues that the ALJ failed to adequately assess and weight the treating source's opinion because the ALJ partially accepted Dr. Kaelin's February 10, 2016 opinion for the time in which the opinion was rendered in the early stages of recovery but did not accept Dr. Kaelin's finding that Plaintiff was wholly disabled. (DN 18-1, at PageID # 1315.) Plaintiff implies that it was incorrect for the ALJ to find subsequent improvement warranted a departure from Dr. Kaelin's treating opinion. (DN 18-1, at PageID # 1315.)

In response, the Commissioner argues that Dr. Kealin's treating source opinion does not need to be given more weight than the opinions of the examining and reviewing sources. (DN 24, at PageID #1333.) Defendant argues that an ALJ may reasonably rely on the opinions of state agency reviewing and consulting physicians under 20 C.F.R 404.1527(e) because state agency consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. (DN 24, at PageID #1335.) Further, Defendant argues the reviewing physicians have the strongest claims to neutrality. *See Lucido v. Barnhart*, 121 F.App'x 619, 622 (6th Cir. 2005).

Defendant relies on *Bledsoe v. Barnhart*, 165 F.App'x 408, 412 (6th Cir. 2006) which held that an ALJ's reason not to credit the treating physician's opinion because the physician's

---

[2] Because Hutchins's claim was filed before March 27, 2017, SSR 96-2p still applies to his claim.

"conclusions were not well supported by the overall evidence of record and were inconsistent with the other medical evidence of record" met the requirement for a specific reason under 20 C.F.R. 404.1527(d)(1).

In the instant case, the ALJ stated:

> As for the opinion evidence, partial weight is given to the February 10, 2016 opinion of Darryl Kaelin, M.D., the Medical Director and Division Chief of UL Physical Medicine and Rehabilitation…He advised the claimant was not able to handle any of his affairs, he was totally disabled, he had severe cognitive-linguistic deficits, he needed significant assist with all mobility, and he needed a guardian to manage his personal, financial and medical affairs (Ex. 11F). Later, on February 23, 2016 and again on April 15, 2016 Dr. Kaelin signed guardian/conservatorship papers…The undersigned at no point accepts Dr. Kaelin's assertions that the claimant is wholly disabled, as this opinion is clearly inconsistent with the objective record as a whole, showing that he made great strides with physical and occupational therapy and was released from inpatient rehab by March 15, 2016. The February 2016 opinions are otherwise only partially accepted for the point in time in which they were rendered, given the claimant was still in the very early stages of his recovery and rehabilitation from his trauma injuries. However, again, by inpatient rehab discharge on March 15, 2016, he was independent in eating, moderate to independent in grooming, upper and lower body dressing, and social interactions, and was supervision to independent with bathing, toileting, and tub transfer. He was able to comprehend and express basic/complex information with no difficulties. He demonstrated mild cognitive-linguistic deficits. He was noted to be distractible at times; however, he was able to complete functional memory/problem solving tasks with minimal cues (Exs. 2F; 3F). This degree of functioning, clearly showing progressive improvement, was contradictory to Dr. Kaelin's later April 15, 2016 opinion, in which he again advised the claimant was wholly disabled and continued the guardian/conservatorship (Ex. 4F)."

(DN 11-2, at PageID #76.) Defendant argues that the ALJ gave "good reasons" for giving only partial weight to the February 10, 2016 opinion of treating physician, Dr. Kaelin because Dr. Kaelin's opinion was issued only one month after Plaintiff's accident, when Plaintiff was still in the very early stages of his recovery and rehabilitation. (DN 24, at PageID #1336).

Exhibits 2F and 3F state that by the time Plaintiff was discharged from inpatient rehabilitation on March 15, 2016, Plaintiff was independent in eating, moderate to independent in grooming, upper and lower body dressing and social interactions. (DN 11-7, at PageID# 769; DN

13

11-8, at PageID # 1046, 1055). The records reflect that Plaintiff was discharged from physical therapy on July 7, 2016 and met all of his goals relating to ambulatory dysfunction and decreased strength, though he did not meet his goals for foot pain. (DN 11-8, at PageID# 1089-1090). Plaintiff's August 2016 all systems consultative exam stated that Plaintiff appeared functionally intact, was able to move around the exam room freely, but still had issues with balance. (DN 11-8, at PageID #1125). Plaintiff's own his testimony suggests he does not use any assistive devices to walk around. (DN 11-2, at PageID #94).

Based on the foregoing, the undersigned finds the ALJ's reliance on improvement in Plaintiff's condition satisfied the "good reasons" requirement for giving partial weight to Dr. Kaelin's opinion. Having reviewed the documents the ALJ cited to in the decision, the undersigned finds that the ALJ's decision is supported by substantial evidence. *See Price v. Comm'r of Soc. Sec.*, 342 Fed.App'x 172, 175-176 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court will generally uphold an ALJ's decision to discount that opinion.")

### C. Duty to Further Develop the Record

(i)      Further Psychological Examinations

It is well-established that an ALJ has a duty to develop the record.  *See Lashley v. Comm'r of Soc. Sec.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983).  Pursuant to 20 C.F.R. § 416.920b(b)(2), if after reviewing the evidence of record, the ALJ finds it to be insufficient or inconsistent, the ALJ may "determine the best way to resolve the inconsistency or insufficiency." 20 C.F.R. § 416.920b(b)(2) (2018).  However, an ALJ is not bound to resolve the inconsistency or insufficiency in a particular manner, though he may take additional steps to do so, including ordering a consultative valuation at the Social Security Administration's expense.  20 C.F.R. § 416.920b(b)(2)(iii).  "An ALJ has

discretion to determine whether further evidence, such as additional testing or expert testimony is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

Plaintiff argues that the ALJ's analysis relies on non-examining evidence in a psychiatric case, and there are not enough psychological examinations in the record to allow for the non-examining opinions to be so heavily weighted. (DN 18-1, at PageID # 1316).

Plaintiff further argues that the State Agency psychological consultant issued his opinion in October 2016, but Plaintiff's date of insured status expiration was December 31, 2020 (DN 11-3, at PageID #120). (DN 18-1, at PageID # 1315.) Plaintiff argues that based on this, the ALJ should have felt obligated to update the record with a second psychological examination. (DN 18-1, at PageID # 1315.)

In response, the Defendant argues that the ALJ was not required to further develop the record to obtain newer psychological opinion evidence, and/or examining opinions that establish Plaintiff's productivity level. (DN 24, at PageID # 1341.) Defendant argues that if Plaintiff thought a newer medical opinion was necessary, it was his obligation to obtain such an opinion from his treating source. (DN 24, at PageID # 1342.)

Defendant argues that pursuant to 20 C.F.R. 404.1512(a) it is Plaintiff's burden to prove that they are disabled because as stated by the Supreme Court in *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) "the claimant…is in a better position to provide information about his own medical condition."

The record shows that allegations of impairments are for brain injury, fractured pelvis and four fractured vertebrae. (DN 11-3, at PageID #120.) The ALJ found that the claimant suffered from mild neurocognitive disorder and adjustment disorder with mood disturbance in addition to other severe impairments. (DN 11-2, at PageID # 66.) The ALJ did not find that claimant suffered from

peripheral neuropathy despite comparing the severity of claimant's mental impairments to the criteria of listings 12.02, 12.04, and 12.06. (DN 11-2, at PageID #67-68.) The ALJ found that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." (DN 11-2, at PageID #68.) In making this determination the ALJ cited to Ex. 9F, 3E/7 and 3E/8 which consist of the Consultative Examination Report from Dr. Conyer and Plaintiff's Function Report dated 9/20/16. (DN 11-2, at PageID #68.)

An ALJ need only seek additional evidence, or require a claimant to undergo a consultative examination, when the evidence in the record is inconsistent or insufficient to reach a decision. 20 CFR §404.920b(b). Plaintiff does not specifically identify what information the ALJ should have included in the RFC that would have been obtainable from a second psychological examination and Plaintiff does not identify any specific insufficiencies or inconsistencies in the record. *See Barron-Green v. Comm'r of Soc. Sec*., No. 1:18-cv-1705, 2019 WL 4194142, at *8 (N.D. Ohio, Sept. 4, 2019).

Plaintiff has not demonstrated that there was any insufficiency or inconsistency in the record that the ALJ had a duty to remedy. Because there was sufficient evidence for the ALJ to determine whether Plaintiff is disabled and to make conclusions as to the extent of Plaintiff's impairments, the undersigned finds that the ALJ did not fail to develop the record.

(ii)     Further VE Testimony

At step five, the ALJ has the burden of demonstrating that there exist a significant number of jobs in the economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience.   20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. § 416.960(c) (2018); *Jordan*, 548 F.3d at 423.  The Commissioner may meet this burden by relying

on vocational expert ("VE") testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations.  *See, e.g., Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  A VE's testimony can constitute substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the economy, *Bradford v. Sec'y Dep't. of Health & Human Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a VE's testimony is based on a hypothetical question that "accurately portrays [a claimant's] individual physical and mental impairments."  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).  Further, an ALJ's hypothetical need only include those limitations that he or she has accepted as credible. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993); *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir.2013).

Plaintiff argues that further development of the record by VE testimony was warranted. (DN 18-1, at PageID # 1315.) Plaintiff argues that VE testimony establishes the importance of Plaintiff's productivity, but that Plaintiff's productivity level has not been established. (DN 18-1, at PageID # 1316.)

First, Plaintiff argues that the VE testified that if a worker at the sedentary level was observed to have a constant problem with reduced productivity by 10 percent and could not meet production quotas in industrial settings or complete work assignments in a timely manner and not production settings, this would preclude work. (DN 11-2, at PageID #111). Second, Plaintiff argues that the RFC limits the claimant to occasionally interacting with supervisors and coworkers,

but that the VE testified that if the hypothetical individual were not capable of interacting with supervisors, co-workers, and the public for up to two-thirds of an eight-hour workday, that would preclude the jobs cited (DN 11-2, at PageID #110). Plaintiff argues that therefore, the VE testimony calls into the question the ability of Plaintiff to perform work as a document preparer or final assembler. (DN 18-1, at PageID # 1316).

Plaintiff also argues that due to Plaintiff's memory issues (DN 11-8, at PageID # 1072, 1092, 1102, 1137, 1143), the ALJ has not established through examining reports that Plaintiff has the capacity for sufficient production to maintain employment. (DN 18-1, at PageID # 1316.)

In response, Defendant argues that the vocational expert was not required to establish that the representative jobs identified by the VE do not require Plaintiff to interact with others for up to  two-thirds of a work day. (DN 24, at PageID #1342.) Defendant argues that the ALJ was not required to present or incorporate limitations beyond those he believed to be credibly supported by the evidence. (*Id.*) Defendant argues that simply because the VE testified on questioning from Plaintiff's counsel that an inability to interact with supervisors, coworkers, and the general public for up to two-thirds  of a workday would preclude the identified jobs is irrelevant because the ALJ did not impose that requirement in his RFC or hypothetical. (DN 11-2, at PageID # 107.) Similarly, Defendant argues that Plaintiff's argument that the ALJ should have imposed a limitation that he would have a constant problem with reduced productivity by ten percent and could not meet production quotas in industrial settings or complete work assignments in a timely manner, is also irrelevant because the ALJ imposed only those limitations deemed credible. (DN 24, at PageID #1344.)

The undersigned observes that the VE testimony Plaintiff points to above were not answers in response to questions asked by the ALJ, but instead were in response to questions asked by

Plaintiff's counsel. The VE specifically stated she did not consider any factors or limitations beyond those identified by the judge. (DN 11-2, at PageID #112.) The record reflects that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that the ALJ deemed credible.

In regards to productivity, the first hypothetical provided by the ALJ included the limitation that "all the work should be considered low-stress work with no strict production rate quotas starting at the light range as that term is defined by Social Security regulations." (DN 11-2, at PageID #107.) In regards to memory, the ALJ acknowledged in the decision that Plaintiff had a moderate limitation in understanding, remembering, or applying information and cited to the fact that "while he demonstrated variable performance on different memory tests during the October 2016 mental status exam…the claimant testified that he is able to prepare simple meals, manage money, drive, shop and do some routine household chores. Medical findings note that he has been able to provide information about his health, describe his prior work history, follow instructions from healthcare providers, and respond to questions from medical providers. At the hearing, he tracked the questioning quite well and responded in a timely and coherent manner." (DN 11-2, at PageID #68.) Since the ALJ had the opportunity to observe the demeanor of the plaintiff, the ALJ's "conclusions with respect to credibility should not be discarded lightly." *Varley*, 820 F.2d at 780.

Therefore, the undersigned finds that the ALJ properly omitted limitations that he deemed not to be credible in posing his hypothetical to the VE and finds no error in the ALJ's step five analysis.

## 2.   The ALJ Failed to Support his physical RFC with a functional assessment

Plaintiff argues that there was no functional opinion to state that Plaintiff could specifically perform sedentary work because neither Dr. Kaelin's nor Dr. Gale-Dryer's opinion addressed Plaintiff's actual functional capacity. (DN 18-1, at PageID #1317). Instead, Plaintiff implies the

ALJ relied on "raw medical data". (DN 18-1, at PageID # 1316-1317). Plaintiff argues that the ALJ may not interpret raw medical data in functional terms. (DN 18-1, at PageID #1316.)

Plaintiff argues that the ALJ did not accept Dr. Kaelin's determination that Plaintiff was wholly disabled, but instead afforded "partial weight" to Dr. Kaelin's February 10, 2016 opinion that Plaintiff "was not able to handle any of his affairs, he was totally disabled, he had severe cognitive-linguistic deficits, he needed significant assistance with all mobility, and he needed a guardian to manage his personal, financial and medical affairs." (DN 18-1, at PageID # 1317).

Further, Plaintiff argues that the ALJ did not accept Dr. Gale-Dryer's opinion of limitation to light work, but instead stated "given the updated record received in connection with the hearing showing continued neuropathic/radiculopathy pain in the left lower extremity as well as a second episode of deep vein thrombosis in this extremity, the undersigned concludes that a range of sedentary or sit down work as assessed better reflects the claimant's residual functional capacity." (DN 11-2, at PageID #77.)  Plaintiff argues that because the ALJ modified the opinion of the non-examining State Agency medical consultants, the ALJ has not supported his RFC with substantial evidence. (DN 18-1, at PageID #1318.)

An RFC determination is a legal decision rather than a medical one, and the development of a claimant's RFC is solely within the province of the ALJ. 20 CFR 404.1546(c).  "An ALJ considers numerous factors in constructing a claimant's RFC, including the medical evidence, non-medical evidence, and the claimant's credibility." *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x 435, 439 (6th Cir. 2010).

Based on the Plaintiff's medical history, the ALJ found that Plaintiff would have difficulty with work involving heavy lifting and carrying, prolonged standing and walking, and constant postural actions.  (DN 11-2, at PageID #74.) The ALJ found Plaintiff's balance issues and history

of deep vein thrombosis would necessitate restrictions around work hazards, but the ALJ concluded Plaintiff retained the ability to perform a reduced range of sedentary work. (*Id.*) The ALJ discussed Plaintiff's physical health at length in his decision and based all of this information off of plaintiff's testimony, and reports of treating physicians, examining physicians and non-examining physicians. (DN 11-2, at PageID # 70-74.) Unlike in *Houston v. Astrue,* No. 5:09-cv-220, 2010 WL 3620205 at *7 (W.D.Ky. July 20, 2010), the non-examining sources in the instant case were aware of the treatment records and treating source opinions.

Based on the foregoing, the undersigned finds that the ALJ's RFC determination was supported by substantial evidence.

**(1)  Additional Medical Evidence**

Plaintiff argues that subsequent to the ALJ's decision and prior to the Appeals Council's decision, Brandon Wampler ("Wampler"), a physician's assistant, completed a Lumbar Spine RFC Questionnaire (DN 11-2, at PageID #115). Plaintiff argues that Wampler's evaluation of Plaintiff precluded sedentary work. (DN 18-1, at PageID # 1318). Plaintiff argues that the Appeals Council had sufficient information to warrant remand for reconsideration of the opinion evidence. (DN 18-1, at PageID #1318).

Defendant argues that late submitted evidence may not be considered for purposes of determining whether substantial evidence supports the ALJ's decision. (DN 24, at PageID # 1347). Instead, evidence submitted for the first time to the Appeals Council or a reviewing court may be considered only for purposes determining whether remand is appropriate under the sixth sentence of 42 USC 405(g), which Plaintiff has not requested. (DN 24, at PageID #1347).

The sixth sentence of 42 USC 405(g) provides, "The Court may…at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence

which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

Defendant argues that on February 28, 2019, over seven months after Plaintiff's hearing and four months after the ALJ's decision, Plaintiff's lawyer submitted to the Appeals Council a February 28, 2019 "Lumbar Spine RFC questionnaire" signed by Wampler (TR 66-69). The Appeals Council denied further review finding that the document did not show a reasonable probability that it would change the outcome of the ALJ's decision. (DN 11-2, at PageID # 51.)

Evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding. *Ferguson v. Comm'r of Soc. Sec*, 628 F.3d 269, 276 (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Evidence is material only if there is a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence. *Id.* A claimant shows good cause by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Id.* The burden of showing that a remand is appropriate is on the claimant. *Id.*

Defendant argues that Plaintiff has not established that good cause existed for his failure to previously submit the evidence to the ALJ. (DN 24, at PageID # 1350). The undersigned finds that Plaintiff does not explain why he did not obtain and submit an opinion from Wampler prior to his ALJ hearing and accordingly, Plaintiff has not shown good cause for failure to incorporate Wampler's evidence into the record in a prior proceeding. *See Oliver v. Sec'y of HHS*, 804 F.2d 964, 966 (6th Cir. 1986).

## III.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

July 30, 2020

cc:  Counsel of record

Colin H Lindsay, Magistrate Judge
United States District Court

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).